IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT MARTIN,

       Plaintiff,        OPINION & ORDER

 v.

                          14-cv-83-jdp

LG ELECTRONICS USA, INC.,
LG ELECTRONICS, INC.,
HITACHI-LG DATA STORAGE, INC.,
CYBERLINK.COM CORP., and
CYBERLINK CORP.,

       Defendants.

---

   In 2011, plaintiff Scott Martin purchased an LG "Super Multi Blue" Blu-ray disc drive (BD player) that he installed in his computer. The BD Player came with PowerDVD software for the playback of prerecorded Blu-ray discs. But when he tried to use his BD player to watch a rented Blu-ray disc, the BD player could not play the movie unless he purchased a software upgrade. Defendants LG Electronics USA, Inc. (LGUS); LG Electronics, Inc. (LG); and Hitachi-LG Data Storage, Inc. (HLDS) made, designed, packaged, marketed, distributed, and sold Martin's BD player. Defendants Cyberlink.com and Cyberlink (collectively Cyberlink) marketed the PowerDVD software. Martin alleges that defendants conspired to sell a product bundled with obsolete software, which rendered the player useless without an upgrade. He brings this class action to enforce his own rights and the rights of those who are similarly situated.

   All five defendants have moved to dismiss on various grounds. Dkt. 22, Dkt. 34, and Dkt. 68. The court will grant Cyberlink's motion to dismiss for lack of personal jurisdiction. The court will grant much of LGUS, LG, and HLDS's motions to dismiss for failure to state a claim and lack of subject matter jurisdiction. Martin may proceed only on his claim that defendants

LG and LGUS violated the Wisconsin Deceptive Trade Practices Act (WDTPA). Cyberlink and HLDS will be dismissed from this case.

Also before the court are Martin's motions to certify the following proposed classes: (1) all persons in Wisconsin who purchased LG, LGUS, or HLDS BD players bundled with discontinued Cyberlink software at any time between February 8, 2008, and the date of an order granting class certification (Wisconsin Class); (2) all persons in Wisconsin who purchased LG, LGUS, or HLDS Super Multi Blue Blu-ray Disc players bundled with discontinued Cyberlink software at any time between February 8, 2008, and the date of an order granting class certification (Wisconsin Super Multi Blue Class); (3) all persons in the United States who purchased LG, LGUS, or HLDS Blu-ray Disc players bundled with discontinued Cyberlink software at any time between February 8, 2008, and the date of an order granting class certification (National Class); and (4) all persons in the United States who purchased LG, LGUS, or HLDS Super Multi Blue Blu-ray Disc players bundled with discontinued Cyberlink software at any time between February 8, 2008, and the date of an order granting class certification (National Super Multi Blue Class). Dkt. 3. The court will not certify Martin's proposed National Class or National Super Multi Blue Class, and defer Martin's motion for class certification of the proposed Wisconsin Class and Wisconsin Super Multi Blue Class.

ALLEGATIONS OF FACT

The court recounts the facts as alleged by Martin because on a motion to dismiss, the "court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). The court will also consider affidavit evidence supplied by the parties in connection with Cyberlink's motion to dismiss for lack of personal jurisdiction. *Nelson*

by *Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

In February 2011, Martin purchased a "Super Multi Blue" BD player from Newegg, Inc. (a non-party) to insert as an internal drive into his computer. HLDS, LG, and LGUS were responsible for designing, providing, packaging, marketing, distributing, and selling the BD player. The Cyberlink defendants were responsible for the PowerDVD 8 software, which was bundled with the BD player. By the time Martin bought the player, the Cyberlink defendants had discontinued the software and were no longer providing free updates. But Martin had no knowledge that his PowerDVD 8 software was obsolete and that he would need to purchase an upgrade to fully operate his BD player.

Approximately eight months after Martin purchased the BD Player, he tried to watch a rented Blu-ray movie. But his screen displayed a message indicating that he would have to purchase a software upgrade. He had the same experience when he attempted to watch certain other movies on his BD player. Martin contacted each defendant regarding the problem. HLDS advised Martin to contact LG and LGUS. LG and LGUS did not respond. The Cyberlink defendants claimed that Martin could install free updates that would allow him to play the movies. However, Cyberlink had stopped issuing free updates compatible with PowerDVD 8 long before Martin had purchased his BD player, and so Martin would have to purchase any upgrade he wanted to install.

Martin, assuming that other consumers in Wisconsin and the United States had experienced similar problems with their BD players, filed this case as a purported class action. The court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

ANALYSIS

Martin brought this action against LGUS, LG, HLDS, Cyberlink.[1] He asserts five causes of action: (1) tortious interference with contract; (2) common law fraudulent misrepresentation; (3) violation of the Wisconsin Deceptive Trade Practices Act (WDTPA), Wis. Stat. § 100.18 *et seq.*; (4) unjust enrichment; and (5) civil conspiracy. Martin alleges that defendants' actions interfered with his contract with non-party Newegg to sell him a functional BD player. He further alleges that the packaging and marketing of the BD player fraudulently misrepresented that it could play all BDs regardless of format. Similarly, the false statements violated WDTPA. Because his player was less valuable than advertised, Martin alleges that defendants were unjustly enriched. Finally, Martin alleges that defendants knowingly conspired to violate the law by selling BD players with obsolete software. He claims that if he and other class members had known that the PowerDVD 8 software was obsolete, they would have returned the BD player, paid less for it, or simply not purchased it. Martin seeks to represent a class and be awarded damages and restitution. He proposes that the court establish a constructive trust that would consist of a portion of money defendants received from BD player sales and software upgrades.

Defendants LGUS, LG, HLDS, and Cyberlink have moved to dismiss on numerous grounds. First, the Cyberlink defendants assert that this court lacks personal jurisdiction over them. Further, defendants all contend that Martin fails to state a claim for tortious interference with contract, fraudulent misrepresentation, and civil conspiracy. LGUS and LG argue that Martin has not pled his WDTPA claim with sufficient particularity. Finally, defendants LGUS, LG, and HLDS assert that Martin fails to state a claim for unjust enrichment. Based on these

---

[1] Martin names various officers, employees, and agents of defendants and other entities as John Does 1-20 in his complaint. Martin offers these as placeholders in the event discovery reveals identifying information; there is no need to address claims against the Doe defendants at this point.

alleged deficiencies, defendants argue that Martin's motion to certify the proposed classes is moot and should be denied. They also assert that even if he has a claim, Martin lacks standing to assert claims on behalf of BD player purchasers outside of Wisconsin.

**A. Personal jurisdiction over the Cyberlink defendants**

The Cyberlink defendants assert that this court lacks personal jurisdiction over Cyberlink.com, a California corporation, and Cyberlink, a Taiwanese company. They first contend that neither Cyberlink.com nor Cyberlink are registered to do business, have offices, or pay taxes in Wisconsin. Neither had employees in Wisconsin at the time the suit was filed or at the time the alleged conduct took place. They also do not advertise in Wisconsin, and did not manufacture, import, market, or sell Martin's BD player to him. Finally, they assert that Martin does not allege that any of Cyberlink's conduct specifically targeted or exploited Wisconsin, or that his claims arise from any alleged conduct between Cyberlink and Wisconsin.[2] The court agrees that it lacks personal jurisdiction over Cyberlink and will grant its motion to dismiss.

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the burden of proof rests on the party asserting jurisdiction. *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1157 (W.D. Wis. 2004). Wisconsin courts require the party asserting personal jurisdiction to satisfy the requirements of the state's long-arm statute, Wis. Stat. § 801.05, and the Due Process Clause of the United States Constitution. *See Logan Prod.s, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). Wisconsin's long-arm statute is liberally construed in favor of jurisdiction. *See Marsh v. Farm Bureau Mut. Ins. Co.*, 179

---

[2] Martin moved for leave to belatedly file a declaration in support of personal jurisdiction over Cyberlink. Dkt. 44. The proposed declaration fails to state that it was made under penalty of perjury as required by 28 U.S.C. § 1746. It also describes Cyberlink products that are not at issue in this case, offered for sale at retailers that are irrelevant to this case. Further, the declaration fails to present information from the relevant time period. Even if the court allowed the belated declaration, it is unpersuasive on the issue of personal jurisdiction.

Wis. 2d 42, 52, 505 N.W.2d 162 (Ct. App. 1993). The Cyberlink defendants are covered by the Wisconsin long-arm statute, but personal jurisdiction over them would not satisfy the due process requirements of the Constitution.

When a plaintiff suffers an injury within this state arising out of a defendant's out-of-state act or omission, the plaintiff must establish that at the time of the injury, the defendant's products, materials, or things processed, serviced, or manufactured were consumed in Wisconsin in the ordinary course of trade. Wis. Stat. § 801.05(4)(b). Here, Martin purchased a BD player that included PowerDVD 8 software and he attempted to use it in Wisconsin. Martin's injury—the result of his nonfunctional BD player—also occurred in Wisconsin. Cyberlink's PowerDVD software comes with continuing upgrades that extend well past purchase and Cybrlink's software was consumed in Wisconsin in the ordinary course of trade. Based on these considerations, Cyberlink falls within Wisconsin's long arm statute. *Id.*

Next, to establish personal jurisdiction under the Due Process Clause, Martin must show that the Cyberlink defendants purposefully established minimum contacts in Wisconsin, and the court considers those contacts in light of other factors to determine whether personal jurisdiction comports with "fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The minimum contacts must be the result of the Cyberlink defendants purposefully availing themselves of the privilege of conducting business in Wisconsin, thereby invoking the benefits and protections of Wisconsin's law. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that a defendant is not "haled into court" solely as a result of attenuated contacts, or of the unilateral activity of another party. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Although Cyberlink falls within Wisconsin's long-arm statute, exercising personal jurisdiction over Cyberlink would not comport with due process requirements.

6

Martin alleges that the court may exercise personal jurisdiction because his claims arise from the sales and services that Cyberlink solicited in Wisconsin, and that Cyberlink directly contacted him to solicit him to purchase a software upgrade. However, Martin's argument falls short of establishing minimum contacts through purposeful availment for two reasons. First, Martin did not directly purchase his PowerDVD software from Cyberlink. Rather, he made his purchase from Newegg, a separate vendor that is not a party to this case and is completely separate from Cyberlink. Perhaps Newegg has somehow targeted Wisconsin, but Newegg's sale of the BD Player to Martin says nothing about whether Cyberlink has purposefully directed activities toward this forum. Second, Martin's illustration of Cyberlink's direct contact is in the form of a pop-up screen presenting a message that he had to buy a software upgrade to watch his movie, and providing Internet links to those upgrades.

However, as Cyberlink correctly contends, a pop-up screen that is likely an automatic function of the PowerDVD software is hardly equivalent to purposeful contact between Cyberlink and Wisconsin. *See Hy Cite Corp.*, 297 F. Supp. 2d at 1164 ("[D]efendant's website is akin to an advertisement in a magazine with a national circulation; the defendant does not control who views it or responds to it."). When Martin reached out to Cyberlink with a phone call about his problem, Cyberlink did not offer him any new information. Martin does not allege that their conversation changed the nature of his claim or the propriety of exercising personal jurisdiction over Cyberlink. Therefore, the contacts between Cyberlink and Wisconsin are far too attenuated to establish this court's personal jurisdiction over Cyberlink, and Cyberlink will be dismissed from this action.

**B. The economic loss doctrine**

Martin alleges that defendants LG, LGUS, and HLDS fraudulently misrepresented that the BD player was "compatible with all BD/DVD/CD formats." Dkt. 1, ¶ 147. He claims that

7

the statement is false because his player contained obsolete software and was not "compatible with all" BDs. *Id.* ¶ 148. Similarly, Martin alleges that defendants' statements promising automatic updates to the software were also false because the updates had been discontinued by the time he purchased the player. *Id.* ¶ 150. At its heart, Martin's claim is really a breach of warranty claim, but he has pled multiple tort theories, presumably because tort damages would be more attractive. But Martin's tort claims are barred by Wisconsin's version of the economic loss doctrine.

The economic loss doctrine generally prevents a plaintiff from claiming tort damages for purely economic losses when the underlying wrongful conduct is a breach of a contract between the parties. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233 ("[T]he economic loss doctrine precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations.") (citations omitted). Martin's core claim appears to be the prototype of one barred by the economic loss doctrine. The economic loss doctrine precludes recovery for "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Northridge Co. v. W.R. Grace & Co.*, 162 Wis. 2d 918, 471 N.W.2d 179, 182 (1991).

But the doctrine has three principle exceptions. First, the "fraudulent inducement" exception exists when a party suffers loss "extraneous" to the contract. *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 42, 283 Wis. 2d 555, 699 N.W.2d 205. Second, the "services" exception states that if a service is the predominant purpose of a mixed contract encompassing the sale of goods and services, then the contract is not subject to the economic loss doctrine. *See Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 8, 283 Wis. 2d 606, 699 N.W.2d 189. Third, the economic loss doctrine does not bar any claims for noneconomic loss, such as personal injury or

8

damage to property. *See Daanen & Jansen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 573 N.W.2d 842, 845 (1998). However, because Martin's claim does not meet any exceptions to the economic loss doctrine, his tort claims will be dismissed.

1. **The fraudulent inducement exception**

The fraudulent inducement exception applies in situations where parties to a contract appear to negotiate freely, but one party's fraudulent behavior results in the other party's inability to negotiate fair terms and make an informed decision. *See Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶ 30, 274 Wis. 2d 631, 683 N.W.2d 46. For the fraudulent inducement exception to apply, the alleged fraud must not be interwoven with the contract; it must be extraneous to the agreement. *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶ 3, 262 Wis. 2d 32, 662 N.W.2d 652. Stated another way, the fraud must concern a risk that does not relate to the quality or characteristics of the goods for which the parties contracted. *Kaloti*, 2005 WI 111, at ¶ 42.

In this case, the fraud that Martin alleges—that defendants induced him to purchase malfunctioning BD players—is wholly interwoven with the warranty offered on the BD player. That warranty promised a functioning BD player. Martin alleges that promoting the BD Player and offering the warranty was a fraudulent misrepresentation. Because the alleged misrepresentation is at the heart of the parties' contract, and not extraneous to it, the fraudulent inducement exception does not apply.

2. **The services exception**

The services exception to the economic loss doctrine requires that the contract be for the sale of services rather than goods. *Schreiber Foods v. Lei Wang*, 651 F.3d 678, 683 (7th Cir. 2011). In Wisconsin, the purpose of this exception stems from the inapplicability of the Uniform Commercial Code (U.C.C.) to contracts for services. *See Ins. Co. of N. Am. v. Cease Elec. Inc.*, 2004 WI 139, ¶ 29-32, 276 Wis. 2d 361, 688 N.W.2d 462. While the U.C.C.'s built-in

9

warranty provisions provide adequate remedies for breach of contract for the sale of goods, it does not contain similar provisions for service contracts. *Id.* ¶¶ 31, 35. Because Martin's contract with defendants LGUS, LG, and HLDS was exclusively for the sale of his BD player, rather than for any services, this exception does not apply.

Throughout his complaint, Martin refers to LGUS, LG, and HLDS as BD player *manufacturers* and providers of consumer electronic *products*. *See e.g.* Dkt. 1, ¶ 6. Martin's tort claims against the remaining defendants do not fit within Wisconsin's narrow exception because defendants exclusively provided goods rather than services.[3]

### 3. The noneconomic loss exception

Economic loss is recognized as damage to a product itself or monetary loss caused by a defective product. *Wausau Tile, Inc. v. Cnty. Concrete Corp.*, 226 Wis. 2d 235, 593 N.W.2d 445, 451 (1999). Therefore, the economic loss doctrine does not bar noneconomic claims of personal injury or damage to other property. *Id.* Martin claims that he suffered noneconomic loss in the form of money spent on a product and associated services that did not work as promised, including purchasing software upgrades and renting BDs.[4] He also states that he and other putative class members wasted time and effort in determining the problem with their BD players and software. Dkt. 1. However, these complaints are economic and do not fall within the

---

[3] Martin contends that Cyberlink was a provider of services to BD player customers in the United States. *See* Dkt. 1, ¶ 46. Because Cyberlink will be dismissed for lack of personal jurisdiction, the court need not decide whether software provider Cyberlink would fall within the services exception.

[4] Martin's claim that the player damaged his computer lacks particularity. He does not explain what the damage was, or how any of the remaining defendants caused it. The complaint mentions only a pop-up screen about a software upgrade, which Martin does not contend caused any damage. *See* Dkt. 1, ¶¶ 130 and 131. A conclusory assertion of damage to property is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Lastly, Martin's reference to another consumer's trouble uninstalling the software does not support his own claim of computer damage.

noneconomic loss exception.

The exception is a narrow one, intended to allow redress for injuries that "presented unreasonable danger to persons and property." *See Digicorp, Inc.*, 2003 WI 54, ¶ 41. Martin's alleged injuries are not of this type; they are merely consequential economic losses. Spending money on a BD player that did not work as promised, on software upgrades, and on unwatched movies unmistakably constitutes economic loss. Martin is simply attempting to recover "damages for inadequate value, because the product [did] not work for the general purpose for which it was manufactured or sold." *Northridge Co.*, 471 N.W.2d at 185. Martin also asserts that he and other class members wasted time and energy in determining the problem with the BD player and its software. But this is not a personal injury. Martin has failed to plead a fraudulent misrepresentation claim that meets any exception to the economic loss doctrine.

Martin's claim that defendants tortuously interfered with his contract with Newegg is also barred by the economic loss doctrine, but merits further explanation. The prototypical tortious interference claim would not necessarily be barred by the economic loss doctrine. For example, if a competitor solicited another company's key employee and knowingly induced her to breach her employment contract, the former employer's claim would not likely be barred by the economic loss doctrine because the underlying wrongful conduct is not a breach of the contract between the competing companies. But here, the underlying wrongful conduct that Martin alleges is defendants' breach of warranty. Because Martin is alleging interference based on conduct that is wholly interwoven with his breach of contract claim, the economic loss doctrine does apply and bars his claim. *See Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1016 (W.D. Wis. 2008). The court will therefore dismiss his claims for tortious

interference with contract. [5]

**C. Unjust enrichment**

Defendants LGUS, LG, and HLDS contend that the court must dismiss Martin's claim for unjust enrichment because Wisconsin does not recognize a claim in quasi-contract where an express contract exists. Dkt. 35. Martin acknowledges that point as generally true, but responds that his claim should survive because: (1) his contract with defendants is not relevant to the subject matter of his complaint; (2) the contract pleaded in his complaint is between Martin and Newegg, not the defendants; and (3) he is allowed to plead in the alternative, so dismissing his claim at this stage would be premature. Dkt. 42. These arguments are unpersuasive and the court will dismiss Martin's unjust enrichment claim.

To state a claim for unjust enrichment in Wisconsin, a plaintiff must show that: (1) plaintiff conferred a benefit on the defendant, (2) the defendant appreciated or knew of the benefit, and (3) the defendant accepted or retained the benefit under circumstances making retention of the benefit inequitable without payment. *Puttkammer v. Minth*, 83 Wis. 2d 686, 266 N.W.2d 361, 363 (1978). However, a plaintiff may bring a claim for unjust enrichment only in the absence of an enforceable contract. *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011). Therefore, plaintiffs in Wisconsin cannot recover under the quasi-contractual doctrine of unjust enrichment if an express contract exists. *Id.* at 684. Holding a party liable on an unjust enrichment claim would be inequitable when an express contract exists between the parties.

Here, an express contract undoubtedly exists between Martin and defendants LG, LGUS, and HLDS. The parties agree that the BD player included a warranty. Dkt. 1 and Dkt. 35. But

---

[5] Defendants offer additional persuasive arguments for why Martin fails to state a claim for tortious interference with contract. The court need not decide these issues in light of its decision on the economic loss doctrine.

Martin argues that the warranty does not cover the same subject matter as his claim because it does not specifically address software compatibility issues or future software upgrades. However, Martin's complaint recognizes that the warranty covers precisely the basis for his claim: the BD player's ultimate functionality. Dkt. 1, ¶ 152 (alleging that the warranty failed to disclose that the BD player was not "fully functional" absent software upgrades). That is the pertinent subject matter. Because an express contract existed between the parties, and because the contract covered the same subject matter of the claim at issue, defendants' motion to dismiss will be granted with respect to Martin's unjust enrichment claim.

Martin's claim that his contract is with Newegg, and not with the defendants, also fails. The BD player warranty is an express contract between Martin and the defendants. *See Ball v. Sony Elecs. Inc.*, No. 05-cv-307, 2005 WL 2406145, at *5 (W.D. Wis. Sept. 28, 2005). (explaining that even when the manufacturer of a product is not a party to a sales contract for the manufacturer's product, a contract arises between the ultimate purchaser and the manufacturer providing the warranty). Finally, Martin's argument that dismissal is premature because he is permitted to plead in the alternative is similarly unavailing. Martin is correct that he may plead alternative theories of relief, but Martin's allegations of fact do not fit his alternative theory of equitable relief. He concedes that he has a warranty. Dkt. 1, ¶ 37. A warranty is an express contract. Therefore, his unjust enrichment claim will be dismissed.

**D. WDTPA**

Martin alleges that defendants LG and LGUS violated WDTPA, Wis. Stat. § 100.18, by making untrue, deceptive, or misleading representations regarding the functionality of the BD player. Dkt. 1, ¶¶ 174-186. Defendants LG and LGUS respond that Martin's claims are not

alleged with sufficient particularity, although they do not directly attack the applicability of WDTPA to Martin's case.[6] *See* Dkt. 34, Dkt. 35, Dkt. 68, and Dkt. 69.

To state a WDTPA claim, Martin must allege that: (1) LG and LGUS made a representation to the public with the intent to induce an obligation; (2) the representation was untrue; and (3) it caused Martin a pecuniary loss. *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 732 N.W.2d 792 (quoting Wis. Stat. § 100.18). Martin alleges that LG and LGUS advertised on the packaging of the BD player that it was "compatible with all BD/DVD/CD formats." Dkt. 1, ¶ 179. He maintains that the statement was intended to induce him and others to buy the BD player. But because the BD player was not in fact compatible with all BDs unless its software was updated, Martin argues that the statement was not true. Martin claims that he suffered a pecuniary loss in the diminution of the player's value and the money he spent on BDs that he was not able to watch. Because he has alleged each of the criteria listed above with sufficient particularity, Martin's complaint sufficiently states a plausible claim. LG's and LGUS's motion to dismiss will therefore be denied with respect to this claim.

### E. Civil conspiracy

Martin alleges that defendants civilly conspired to establish and maintain a "system in which BD players' device key sets periodically expire, requiring new software to play any BD programmed to recognize that expiration." Dkt. 1, ¶ 65. He argues that their planned obsolescence scheme was a concerted action to "violate or disregard the law, including by intentionally interfering with contracts" and "intentionally and fraudulently misrepresenting the

---

[6] WDTPA claims are not subject to the economic loss doctrine. *Kailin v. Armstrong*, 2002 WI App 70, ¶ 43, 252 Wis. 2d 676, 643 N.W.2d 132, (finding that the economic loss doctrine does not apply to WDTPA claims); *see also Dow v. Poltzer*, 364 F. Supp. 2d 931, 938 (E.D. Wis. 2005) (denying dismissal of a WDTPA claim based on the economic loss doctrine).

functionality of the BD players, violating the Wisconsin Deceptive Trade Practices Act, and unjustly enriching themselves." *Id.* ¶ 205. Of the alleged concerted actions, only his WDTPA claim against LG and LGUS will survive the motions to dismiss. Thus, the issue is whether Martin's complaint adequately alleges a civil conspiracy to violate WDTPA.

"To state a cause of action for civil conspiracy, the complaint must allege: (1) [t]he formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 168, 285 Wis. 2d 236, 701 N.W.2d 523 (quotations omitted). A civil conspiracy claim cannot stand alone; it must be predicated on an underlying wrongful act. *Maleki v. Fine-Lando Clinic Chartered, S.C.*, 162 Wis. 2d 73, 469 N.W.2d 629, 637 (1991) ("[F]or a cause of action for conspiracy to lie, there must be an underlying conduct which would in itself be actionable."). Regardless of whether Martin could theoretically base a civil conspiracy claim on a WDTPA claim, he has not yet done so in this case. The parties that he alleges violated WDTPA are LG and LGUS, a parent company and its wholly owned subsidiary. Where a parent company and its subsidiary have a complete unity of interests and the parent exercises complete control over the subsidiary, they cannot conspire together. *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI 128, ¶ 46-49, 297 Wis. 2d 606, 724 N.W.2d 879. Martin does not differentiate LG and LGUS in his complaint. He does not suggest that they had different objectives in the conspiracy or give any reason to avoid the conclusion that he is alleging an intra-corporate conspiracy. But because Martin has not yet had the benefit of discovery to determine whether LG and LGUS did in fact have unity of interests and whether LG did in fact control LGUS completely, dismissal of this claim is premature. It is plausible that defendants could have conspired and so their motion to dismiss this claim will be denied.

15

CLASS CERTIFICATION

Martin initiated this case as a class action. Dkt. 3. He offers four proposed classes: (1) a Wisconsin Class; (2) a Wisconsin Super Multi Blue Class; (3) a National Class; and (4) a National Super Multi Blue Class. The parties dispute whether the court should consider Martin's standing to represent his proposed classes before or after it considers certifying them. When determining class certification and standing, the "logically antecedent" issue should be considered first. *Compare Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), *with Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

In this case, Martin's standing issue is "logically antecedent" to certification. If Martin lacks standing to represent a purported class, then there is no need to certify it. The standing inquiry "focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). For Martin to have standing, he must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Martin must also be a part of the class he seeks to represent: he must possess the same interest and suffer the same injury as the class. *E. Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by the same legal rules.").

Martin lacks standing to assert claims on behalf of two of his four proposed classes. He cannot assert claims under laws of states where he does not reside and has suffered no injury. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013). Conversely, he cannot assert claims under Wisconsin law on behalf of other class members who have no connection to Wisconsin. Therefore, Martin lacks standing to represent a national class and the court will decline to certify either his proposed National Class

or National Super Multi Blue Class. The question remains whether Martin has standing to represent his proposed Wisconsin classes. When considering both the proposed Wisconsin Class and Wisconsin Super Multi Blue Class, Martin's standing issues described above do not apply. Martin resides in Wisconsin, which is where he was injured, and his claims arise under Wisconsin law. He therefore has standing to represent a class of similarly situated Wisconsinites.

Whether to certify such a class is a different question. Rule 23(c)(1)(A) permits district courts to wait until "an early practicable time" before ruling on a motion to certify a class. Martin filed his motion for class certification early in this case. Dkt. 3. Although by doing so he protected the putative class from attempts to buy him off as a named plaintiff, the timing did not afford defendants the opportunity to oppose the motion. Nor has Martin had the opportunity yet to conduct discovery from defendants. *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("[A] court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class."). The court "must engage in a 'rigorous analysis'—sometimes probing behind the pleadings—before ruling on certification." *Id.* at 896-97 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because this motion is premature without discovery, and because parties have not yet briefed the question of class certification for these narrowed claims, the court will dismiss Martin's motion to certify a class without prejudice. Martin may renew his motion to certify a state-wide class within a deadline to be set at the next scheduling conference.

CONCLUSION

To summarize, the Cyberlink defendants' motion to dismiss is granted because this court lacks personal jurisdiction over the Cyberlink parties. The economic loss doctrine bars Martin's

claims for tortious interference with contract and fraudulent misrepresentation; therefore, both claims are dismissed. His unjust enrichment claim must be dismissed because an express contract exists between Martin and defendants LG, LGUS, and HLDS. But Martin has sufficiently stated a claim under the WDTPA against defendants LG and LGUS. Finally, although Martin's only surviving claim is a WDTPA against a parent company and its wholly owned subsidiary, the court will not dismiss his claim for civil conspiracy against LG and LGUS because, without additional information, it is plausible that they could have conspired. Martin may not proceed on behalf of his proposed National Class or National Super Multi Blue Class, but he may renew his motion to certify the Wisconsin classes at a later date.

## ORDER

IT IS ORDERED that:

1. Defendants Cyberlink Corp. and Cyberlink.com Corp.'s motion to dismiss, Dkt. 22, is GRANTED. These defendants are dismissed from this case.

2. Martin's motion for leave to file a declaration in support of personal jurisdiction over Cyberlink, Dkt. 44, is DENIED.

3. Defendant LG Electronics USA, Inc.'s motion to dismiss, Dkt. 34, is GRANTED in part and DENIED in part. Plaintiff Martin will be permitted to proceed on his WDTPA and civil conspiracy claims against LGUS, but not on his tortious interference with contract, fraudulent misrepresentation, or unjust enrichment claims.

4. Defendants LG Electronics, Inc. and Hitachi-LG Data Storage, Inc.'s motion to dismiss, Dkt. 68, is GRANTED in part and DENIED in part. Martin will be permitted to proceed on his WDTPA and civil conspiracy claims against LG, but not on his tortious interference with contract, fraudulent misrepresentation, and unjust enrichment claims against LG. HLDS is dismissed from this case.

5. Martin's motion for class certification, Dkt. 3, is DENIED without prejudice.

6. The court will hold a follow-up telephonic scheduling conference on April 8 at 2 p.m. before Magistrate Judge Stephen L. Crocker to calendar the remainder of the case leading to trial. Plaintiff is responsible for setting up the call to chambers at (608) 264-5153.

Entered March 31, 2015.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge